In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-13-00389-CR
_____

### IN RE BRETT W. LIGON, MONTGOMERY COUNTY DISTRICT ATTORNEY AND BARBARA ADAMICK, DISTRICT CLERK FOR MONTGOMERY COUNTY, TEXAS

**Original Proceeding**

### MEMORANDUM OPINION

In a petition seeking a writ of mandamus, Brett W. Ligon, the Montgomery County District Attorney, and Barbara Adamick, the Montgomery County District Clerk, ask us to direct the trial court to vacate the trial court's discovery order requiring them to copy the six hundred most recent juror questionnaire forms and forward the copies to the defendant's expert witnesses, two sociologists. After staying the trial court's order pending our decision in this proceeding, we requested a response from the defendant and real party in interest, Leon Davis. Upon review of the petition, the mandamus record, and Davis's response, we conclude the trial

1

court abused its discretion by ordering production of the juror questionnaires at issue. We conditionally grant Relators' request for relief.

Background

In August 2013, following the trial court's May 2013 appointment of two sociologists at Davis's request, Davis filed a motion seeking to discover the total number of criminal cases filed in 2012 and 2013, the total number of defendants of African-American descent who were tried in 2012 and 2013, the addresses of every juror summoned for jury duty in 2013, the addresses of all E-jurors[1] in 2013, and information about each prospective juror's address and race, as indicated in the six hundred jury information sheets completed by prospective jurors from "all the courts from the most recent trials[.]" While the State agreed to provide some of the items that Davis requested, the State did not agree to produce the jury questionnaires.

The State filed a motion stating that it objected to being required to disclose the questionnaires or the information that was derived from them. According to the State's motion, such discovery is not authorized by the Code of Criminal Procedure and the disclosure of confidential personal information about jurors is

---

[1]*See generally Weeks v. State*, 396 S.W.3d 737, 742-45 (Tex. App.—Beaumont 2013, pet. ref'd) (discussing Montgomery County's internet and telephone-based juror response system); *see also* Tex. Gov't Code Ann. § 62.0111 (West 2013).

prohibited by article 35.29 of the Code of Criminal Procedure and by section 62.0132 of the Texas Government Code. *See* Tex. Gov't Code Ann. § 62.0132 (West 2013); Tex. Code Crim. Proc. Ann. art. 35.29 (West Supp. 2012). Montgomery County filed written objections to producing information about prospective jurors, relying on the same statutes that were discussed in the State's objections.

Several days after Davis filed his motion, the trial court conducted a non-evidentiary hearing on his discovery requests; approximately one week after the hearing, the trial court rendered an order requiring the State to provide the requested questionnaires to defense counsel, allowing the State to redact the questionnaires to remove all information in them except the information about each juror's address and race. The order requires that Davis's attorneys, after providing the questionnaires to their experts, return them to the Clerk of the Court where they were to be destroyed. The order also recites that "[g]ood cause exists to allow disclosure" of the completed questionnaires.

## Discussion

The dispute regarding the State's production of the jury questionnaires arises from a criminal case the State filed in February 2013 against Leon Davis, who was indicted for evading arrest and organized retail theft. In May 2013, Davis filed a

motion to change venue from Montgomery County to Harris County. *See* Tex. Code Crim. Proc. Ann. art. 31.03 (West 2006). Under article 31.03, a change of venue may be granted on a motion supported by the affidavits of the defendant and at least two credible residents of the county, showing either that "there exists in the county where the prosecution is commenced so great a prejudice against him that he cannot obtain a fair and impartial trial[,]" or that "there is a dangerous combination against him instigated by influential persons, by reason of which he cannot expect a fair trial." *Id.* § 31.03(a). In addition to the personal affidavit submitted by Davis, six Montgomery County criminal defense attorneys—Robert Bartlett, Jose Mata, E. Tay Bond, Jerald Crow, Jay M. Wright, and Rick Brass— filed affidavits stating:

> In my opinion as an attorney trying criminal cases in Montgomery [C]ounty, it is not possible for LEON DAVIS to obtain a fair and impartial trial by and before a jury of his peers in Montgomery County, Texas because a proportionate number of people of African American decent [sic] are not included in jury panels in this county.
>
> This suit should be heard in Harris County, Texas where it is possible to obtain a fair and impartial trial as jury panels traditionally include a greater variety of ethnicity.

At the hearing on Davis's motion to produce the questionnaires, Davis's counsel disavowed that he was seeking discovery related to Davis's case. *See* Tex. Code Crim. Proc. Ann. art. 39.14 (West Supp. 2012) (allowing discovery of

4

"tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies[]"). Davis's counsel also explained that he was not seeking any public information or making an open records request. *See* Tex. Gov't Code Ann. § 552.022(a)(17) (West 2012).

Davis's motion does not identify a statute or procedural rule authorizing a trial court to order the State to disclose the jury questionnaires at issue. Also, Davis's counsel failed to demonstrate in the trial court that the questionnaires, or information derived from them, was information subject to disclosure to Davis's attorney and Davis's experts. Generally, information in jury questionnaires is confidential and, as such, subject to only limited disclosure. Under section 62.0132(g) of the Texas Government Code, jury questionnaires may be disclosed to:

> (1) a judge assigned to hear a cause of action in which the respondent to the questionnaire is a potential juror;
>
> (2) court personnel; and
>
> (3) a litigant and a litigant's attorney in a cause of action in which the respondent to the questionnaire is a potential juror.

*Id.* § 62.0132(g).

A written jury summons contains a questionnaire that, after being completed, includes information about a prospective juror's: "(1) name, sex, race, and age; (2) residence address and mailing address; (3) education level, occupation, and place of employment; (4) marital status and the name, occupation, and place of employment of the person's spouse; and (5) citizenship status and county of residence." *Id.* § 62.0132(c). Although the questionnaires are subject to disclosure in the circumstances described by section 62.0132(g), section 62.0132(f) generally provides that the information contained in jury questionnaires is confidential. *Id.* § 62.0132(f), (g). In Davis's case, the trial court ordered that certain information in the completed juror questionnaires be disclosed to Davis's attorney without any showing that his attorney was the attorney in the cause of action in all of the cases that relate to the six hundred questionnaires at issue.

The Code of Criminal Procedure also restricts the trial court's power to disclose information contained in jury questionnaires. Under the Code of Criminal Procedure, information collected about persons who serve as jurors, including addresses, are confidential and may not be disclosed by the court except upon a showing of good cause on application by a party in that case or a member of the news media. *See* Tex. Code Crim. Proc. Ann. art. 35.29. Under the trial court's order, the trial court has required the State to disclose juror information from cases

6

other than Davis's to Davis's attorney. It does not appear that article 35.29 allows the broad disclosure required by the trial court's order.

According to Davis, the trial court had the discretion to order the disclosure of confidential juror information to protect Davis's right to have his jury drawn from a venire representative of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 537 (1975). To establish a prima facie violation of the fair-cross-section requirement, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Weeks v. State*, 396 S.W.3d 737, 742 (Tex. App.—Beaumont 2013, pet. ref'd). According to Davis, the juror information in the questionnaires might provide evidentiary support for a potential claim that certain jurors are systematically excluded from Montgomery County venires. He argues that granting mandamus relief will effectively prevent Davis "from proving the jury system of Montgomery County is broken."

However, Davis's assertion is speculative, as he concedes that prospective jurors are summoned in Montgomery County based on voter's and driver's registration lists. *See* Tex. Gov't Code Ann. § 62.001(a) (West 2013). He produced

no evidence at the hearing that suggests that Montgomery County has a practice that results in the exclusion of any particular or "distinctive" group of jurors by race or by address. *See Duren*, 439 U.S. at 364. Moreover, his claim is prospective, as the array from which his jury will be drawn has not yet been selected.

Davis's request for the juror questionnaires was not made in connection with a challenge to the array that will be called for his case. *See* Tex. Code Crim. Proc. Ann. art. 35.07 (West 2006). Davis's challenge relates to his motion to change venue, a motion that essentially asserts a prospective claim that the jurors ultimately selected in his case would not reflect the composition of the community at large. However, the fair-cross-section principle has never been extended to petit juries. *Lockhart v. McCree*, 476 U.S. 162, 173-74 (1986). Davis's counsel explained that he needed the jury questionnaires to explore the possibility of using a fair cross-section claim as support for transferring venue to a county with a larger minority population. At the hearing, Davis's counsel told the trial court,

> even with the smaller minority population [of Montgomery County], there's something wrong with our jury system, the way we're summoning. And that's why we need the addresses of the people summoned because [the sociologists] suspect that when it comes from the driver's license and the voter registration, something is wrong. We're missing something. They suspect that. That's one area to test in the research. And the other is . . . the E-jury . . . . [B]ecause it relies on computer and Internet, it may very well be racially biased in excluding part of the population.

8

The trial court granted the motion for access to the confidential records to aid the investigation for a motion to transfer venue. While the grounds for seeking the information in the jury questionnaires was claimed to be relevant to the motion to transfer, Davis's counsel admitted that his request was a preview for a possible motion to quash the array "if, in fact, our system is such that it is racially biased[.]" Davis's counsel went on to state during the hearing that at present, "I don't know what to draft until I have the facts that the research produces." Counsel even suggested that he was on a fishing expedition, stating that "we don't know what the answer is. The answer could be that there's not a constitutional issue here."

By seeking a change of venue before the array in his case was summoned, Davis seeks to address a hypothetical claim that the array from which the jury will be selected will have a disproportionate minority representation. He seeks to address a hypothetical problem, not by changing the minority's representation through a challenge to his array, but by changing the venue of his case, transferring it in another community that he subjectively believes will contain more of "his peers." However, a defendant is not entitled to a jury of a particular racial composition. *Gray v. State*, 233 S.W.3d 295, 301 (Tex. Crim. App. 2007); *see also United States v. Reyes*, 252 F. App'x 659, 662 (5th Cir. 2007) (rejecting argument

9

that a transfer to a venue of larger minority representation addresses equal protection and fair cross-section principles).

## Conclusion

The Legislature has protected the privacy rights of persons who answer jury summonses. *See* Tex. Gov't Code Ann. § 62.0132; Tex. Code Crim. Proc. Ann. art. 35.29. Davis has failed to demonstrate that the trial court was authorized to order that information from questionnaires filled out by prospective jurors in other cases be provided to his counsel. Additionally, Davis produced no evidence at the hearing demonstrating that good cause existed to disclose the questionnaires at issue to justify the trial court's decision to disregard the confidentiality requirement in section 62.0132 of the Government Code. We conditionally grant Relators' petition for writ of mandamus and direct the trial court to vacate its order dated August 16, 2013. Because we are confident the trial court will vacate its order, the writ shall issue only if the trial court fails to act within a reasonable time.

PETITION CONDITIONALLY GRANTED.

PER CURIAM

Submitted on September 20, 2013
Opinion Delivered October 16, 2013
Do Not Publish

Before Gaultney, Kreger, and Horton, JJ.