**Affirmed and Opinion Filed October 28, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00442-CR**

**GULILAT TADESSE NIGUSSIE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-83186-2021**

## MEMORANDUM OPINION

Before Justices Molberg, Breedlove, and Kennedy
Opinion by Justice Breedlove

Appellant Gulilat Tadesse Nigussie was convicted of sexual assault of a child after a jury trial and sentenced by the jury to ten years in prison. *See* TEX. PENAL CODE ANN. § 22.011(a)(2). In two issues, appellant argues that the evidence is legally insufficient to support his conviction and that the trial court did not ensure the jury was properly qualified under Article 35.12 of the code of criminal procedure. We conclude the evidence is legally sufficient and that appellant did not overcome the presumption that the jury was properly impaneled. Accordingly, we affirm the trial court's judgment.

Appellant, complaining witness R.A., and most of the witnesses in this case are members of a very tight-knit Ethiopian community in Dallas. One evening in 2016, when R.A. was thirteen or fourteen, she and her family attended a birthday party hosted by her friend H.T.'s parents, Netsy and Alex. Netsy's sister and brother-in-law, appellant, were visiting from Las Vegas with their two daughters, D.D., who was two or three years old, and L.L., whose one-year birthday was the reason for the celebration. R.A. had never met appellant before. At the party, there were at least 20 adults and 10–15 children. Most of the adults congregated in the kitchen and living room while the kids played in one of the two bedrooms toward the front of the house.

At one point, R.A. was asked to watch the children, so she went to the room where they were playing. As she stood in the doorway, she saw appellant standing in the doorway of the bedroom across the hall. R.A. testified that he asked her to come over and help with his crying baby, and she complied. She went into the room, which was dark except for bits of light that shone in from other rooms, and she could see the baby lying on her back on the bed crying. R.A. testified that as R.A. went over to comfort the baby, appellant closed the bedroom door and asked her to lay with him and comfort the baby. R.A. was uncomfortable, so she quickly walked to the door to leave but could not open it because it was either locked or jammed. R.A.

---

[1] The facts of the case are well-known to the parties. Therefore, we include only those necessary to resolve appellant's issues on appeal. *See* TEX. R. APP. P. 47.1.

testified that the baby began crying louder, and when R.A. turned around, the baby was rolling over and about to fall off the bed. R.A. ran and caught the baby in her arms.

R.A. testified that appellant came up behind her and as she held the baby, he pulled down her loose-fitting jeans and underwear below her knees. When R.A. turned around still holding the baby, appellant pushed her onto the bed and held her down by the wrists. The baby stayed on her chest. R.A. testified that appellant then leaned over and "aggressively" put his penis inside her vagina. She said that it was hard, she felt a lot of pressure, and it was very painful. She froze and was physically unable to move. According to R.A., appellant's penis slipped out, and he removed one of his hands from her wrist to try again. She began slipping down the bed, so she moved the baby to the side, got up, pulled up her pants, and ran out of the room. She testified that she was able to get out that time because she was "more aggressive" with the door.

R.A. testified that H.T. and her other friend, K.K. followed her into the bathroom where she began crying and told them what happened. When she returned home that evening, she showered and noted that she felt soreness and pain in her vagina. She testified that she had never had any sexual experience at that time, and she did not really understand what sex was at that point.

R.A. did not immediately tell her parents what happened. When R.A. was 15 or 16, she told her best friend who was a junior in high school. In 2019, then R.A.

–3–

was almost 17 years old, she told her parents. At the time, her friends K.K. and H.T. told her they were going to visit appellant and his family in Las Vegas, and they remembered what had happened to her at the party years earlier. R.A. could see that they "were very uncomfortable and that they didn't feel safe." She decided to tell her parents due to her fear for her friends. She first told her father, who was very upset. Her parents did not call the police at that time, and the family left for a two-month summer vacation in Ethiopia. A few days after their return, R.A.'s parents took her to the Wylie Police Department where she talked to a police officer. She later underwent a forensic interview.

Appellant was charged with continuous sexual abuse of a young child and was convicted after a jury trial. The trial judge made an affirmative finding of family violence and assessed punishment at 51 years' imprisonment. This appeal followed.

## DISCUSSION

### Issue I: Legal Sufficiency

Appellant asserts in his first issue that the evidence is legally insufficient to support his conviction. Specifically, appellant argues that the evidence is insufficient because "R.A. was so unreliable that no rational juror could have believed her." The State responds that appellant does not claim that the State failed to prove any specific element but instead attacks the complainant's credibility in general and that the jury, not appellant, was the sole judge of the complainant's credibility. We agree with the State.

*A.  Standard of Review*

In determining whether the evidence is sufficient to support a criminal conviction, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 316 (1979). We view the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 313; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). The jury, as the fact-finder, may make reasonable inferences from the evidence presented at trial in determining appellant's guilt. *Hooper v. State*, 214 S.W.3d 9, 14–15 (Tex. Crim. App. 2007). When there is conflicting evidence, we presume the fact-finder resolved those conflicts in favor of the verdict and defer to that resolution so long as it is supported by the evidence. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We also defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Our role as an intermediate appellate court is restricted to guarding against the "rare occurrence when a factfinder does not act rationally." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (quoting *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009)).

*B.    Applicable Law*

As relevant to the facts of this case, a defendant commits sexual assault of a child if "regardless of whether the person knows the age of the child at the time of the offense, the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means" or "causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor…" TEX. PENAL CODE ANN. § 22.011.

*C.    Discussion*

The testimony of a victim alone, even if that victim is a child, is sufficient to support a conviction for sexual assault of a child. *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.) (citing *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd) and TEX. CODE CRIM. PROC. ANN. art. 38.07(a)). Corroboration of a child victim's testimony by medical or physical evidence is unnecessary. *Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.) (citing *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.)). "Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Revels*, 334 S.W.3d at 53. Here, R.A. testified that when she was "13, maybe 14," appellant "pushed [her] onto the bed and he held [her] writs down," put "his penis inside of [her] vagina," and that his penis "graze[d] the side of [her] thigh." This testimony alone is sufficient to sustain the conviction. *See id* at 52.

–6–

We conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. §§ 22.021; 21.02; 22.011. Therefore, the evidence is sufficient to uphold appellant's conviction. *See Jackson*, 443 U.S. at 313; *Brooks*, 323 S.W.3d at 899. We overrule appellant's first issue.

**Issue 2: Juror Qualification**

In his second issue, appellant contends the trial court erred in failing to test the jury to determine whether the members were qualified under Article 35.12 of the Texas Code of Criminal Procedure. Under Article 35.12 of the code of criminal procedure, all prospective jurors must be asked either by the court or under the court's direction whether they (1) are a qualified voter, (2) have been convicted of theft or any felony, and (3) whether they are under indictment or legal accusation for theft or any felony. TEX. CODE CRIM. PROC. ANN. art. 35.12(a). We presume the jury was properly impaneled unless the record affirmatively shows otherwise. *See* TEX. R. APP. P. 44.2(c)(2).

The record here shows the trial court referred to the potential jurors as having previously been "down in that room," that he and another judge had gone "down there to qualify," and that the jurors were now "up here in front of the courtroom."[2]

---

[2] We take judicial notice that the central jury room in the Collin County Courthouse is on the first floor and that the courtroom for the 296th court is on the second floor, as requested by the State. *See Lewis v. State*, 674 S.W.2d 423, 426 n.1 (Tex. App.—Dallas 1984, pet ref'd) (holding that courts of appeals may take judicial notice of facts which are notorious, well known, or easily ascertainable; this includes distances between two geographical locations).

Appellant argues it was error for the trial judge not to specifically ask the prospective jurors the three qualifying questions listed in Article 35.12. But in larger judicial districts, these questions are routinely asked of the general jury pool under the direction of the court before the venire members are sent to individual courts to be empaneled for a specific case. *See* TEX. GOV'T CODE ANN. § 62.016; *Roise v. State*; 7 S.W.3d 225, 244 (Tex. App.—Austin 1999, pet. ref'd). The trial judge's statements that he had gone "down there to qualify" implicitly referred to the jurors previously being qualified in a general jury pool in the central room before being assigned to the instant specific panel. Standing alone, the fact that the trial court did not ask the Article 35.12 questions on the record does not overcome the presumption that the jury was properly impaneled. *See Carrier v. State*, No. 05-23-00143-CR, 2024 WL 3507198, at *5 (Tex. App—Dallas, July 23, 2024, no pet. h.) (mem. op., not designated for publication).

Further, appellant affirmatively stated he had no objections to the jurors that were ultimately chosen. Even assuming it was error for the trial not to ask the Article 35.12 questions (and that this error was preserved), to reverse a conviction there generally must be a showing of harm. *See* TEX. R. APP. P. 44.2. When an error arises from a trial court's statutory violation, we determine whether the error affected the defendant's substantial rights. *Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005); *Carrier*, 2024 WL 3507198, at *5 (failure to assess qualifications of venire members not constitutional error) (citing *Njogo v. State*, No. 02-18-00245-CR, 2018

–8–

WL 6844140, at *2 (Tex. App.—Fort Worth Dec. 31, 2018, no pet.) (mem. op., not designated for publication)). To show harm, the record must demonstrate the error deprived appellant of a lawfully constituted jury of qualified individuals. *See Gray v. State*, 233 S.W.3d 295, 301 (Tex. Crim. App. 2007). Appellant does not argue, and the record does not show, that any members of the jury in this case were not qualified. We resolve appellant's second issue against him.

## CONCLUSION

We affirm the trial court's judgment.

230442f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GULILAT TADESSE NIGUSSIE,
Appellant

No. 05-23-00442-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 296th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 296-83186-
2021.
Opinion delivered by Justice
Breedlove. Justices Molberg and
Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 28th day of October, 2024.